NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH GLAZER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATES OF LAURENCE GLAZER AND JANE GLAZER, DECEASED,<br><br>*Plaintiff,*<br><br>v.<br><br>HONEYWELL INTERNATIONAL. INC.,<br><br>*Defendant.* | Civil Action No. 16-7714<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Kenneth Glazer's ("Plaintiff")[1] motion to remand to state court. Defendant Honeywell International, Inc. ("Defendant" or "Honeywell") opposes this motion.[2] This motion was decided without oral argument pursuant to Federal Rule

---

[1] This case is brought by Kenneth Glazer, the son of Laurence and Jane Glazier, both individually as well as on behalf of each of his parents' estates.

[2] Plaintiff's brief in support of his motion to remand will be referred to hereinafter as "Pl. Br." (D.E. 3), Defendant's opposition to Plaintiff's brief will be referred to hereinafter as "Def. Opp'n" (D.E. 4), and Plaintiff's reply brief in support of his motion to remand will be referred to hereinafter as "Pl. R.Br." (D.E. 5).

1

of Civil Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions, and for the reasons stated below, Plaintiffs' motion is granted.

## II. FACTS[3] AND PROCEDURAL HISTORY

On September 5, 2014, Larry and Jane Glazer (the "Glazers") departed from Greater Rochester International Airport in Rochester, New York, in their Socata TBM 900 aircraft (the "Aircraft"). Compl. ¶ 15. Larry Glazer was piloting as they headed to Naples Municipal Airport in Naples, Florida. *Id.* The trip was allegedly going to occur primarily over land rather than veering over the Atlantic Ocean. While flying over land at an altitude of 28,000 feet, the cabin pressurization system failed, causing a sudden loss of cabin pressure. *Id.* ¶¶ 18-19. Larry then reported "an indication that is not correct on the plane" to air traffic control ("ATC") and requested to descend to an altitude of 18,000 feet. *Id.* ¶ 20. Larry was cleared to turn the Aircraft and descend to 20,000 feet. *Id.* ¶ 22. As Larry continued communicating with ATC, his "speech began to slow down, he started to slur his words, and he eventually became unresponsive." *Id.* ¶ 23.

Subsequently, military aircrafts were dispatched to intercept the Glazers' Aircraft, and one of the military pilots saw Larry Glazer unconscious in the pilot seat while the flight was still over land. *Id.* ¶¶ 26-27. The Aircraft then flew over the Atlantic, continued into Cuban airspace, and eventually began to descend after its engine ran out of fuel. *Id.* ¶ 28. The Aircraft crashed into the ocean northeast of Port Antonio, Jamaica. *Id.* ¶ 30.

On August 30, 2016, Plaintiff filed a complaint in the Next York State Supreme Court for Monroe County in Rochester, New York, alleging claims of negligence and products liability

---

[3] The facts of this matter derive from Plaintiff's Complaint ("Compl."). D.E. 1-1. In ruling on a motion to remand, "the district court must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

against numerous Defendants including Honeywell (the manufacturer of thermal sensors used in the Aircraft's cabin pressurization system). D.E. 1., Ex. A. Plaintiff also filed a Complaint against Honeywell in the Superior Court of New Jersey, Morris County ("the New Jersey Action") on September 2, 2016. The New Jersey Action was filed in case Plaintiff did not have jurisdiction over Honeywell in New York. The New Jersey Action alleges causes of action for the defective cabin pressurization system based on (1) strict liability; (2) negligence; and (3) breach of implied warranties. Defendant subsequently removed the New Jersey Action to this Court, invoking admiralty jurisdiction pursuant to the Death on the High Seas Act, 46 U.S.C. § 30302 ("DOHSA"). D.E. 1.[4] Plaintiff now moves to remand.

### III. LAW AND ANALYSIS

#### A. Standard of Review

A motion to remand is governed by 28 U.S.C. § 1447(c), which provides that removed cases shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." Initially when a case is filed in state court, a defendant may remove any action over which the federal courts have jurisdiction. 28 U.S.C. § 1441(a). The party removing the action has the burden of establishing federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). This burden is heavy, since removal statutes are "strictly construed against removal and all doubts should be resolved in favor of remand." *Id.* In short, any doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction. For removal to be proper, a federal court must have original jurisdiction, that is, the removed claims must arise from a "right or immunity created by the

---

[4] DOHSA permits a civil action to be filed when the death of any person "caused by wrongful act, neglect or default occurring on the high seas beyond 3 nautical miles from the shore of the United States[.]" 46 U.S.C. § 30302.

3

Constitution or laws of the United States." *Concepcion v. CFG Health Sys. LLC*, No. 13-02081, 2013 WL 5952042, at *2 (D.N.J. Nov. 6, 2013); *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C.A. § 1447(c).

### B. Discussion

Plaintiff sets forth two primary arguments in support of his motion for remand. First, Plaintiff argues that DOHSA does not apply when the "wrongful act, neglect or default" occurred over land, as is the case here. Pl. Br. at 7-13. Second, Honeywell cannot remove its case to federal court pursuant to DOHSA, alleges Plaintiff. *Id.* at 13. According to Plaintiff, the Court lacks jurisdiction due to the savings-to-suitors clause in 28 U.S.C. § 1333, which "has protected the right of plaintiffs injured at sea to bring their cases in state court." *Id.* at 2. Thus, Plaintiff argues that "DOHSA and other maritime claims property brought in state court are not removable absent an independent ground for federal jurisdiction." *Id.*

Defendant responds that DOHSA is governed by the site of the crash, which occurred over three nautical miles beyond the United States shore, and therefore DOHSA applies. Def. Opp'n at 4-8. Additionally, Defendant argues that the 2011 amendment to 28 U.S.C. § 1441(a) "removed the antiquated requirement of an independent basis for jurisdiction." *Id.* at 9. Therefore, DOHSA, along with the diversity of the parties, makes subject-matter jurisdiction proper according to Honeywell. *Id.* at 10.

Because the Court finds Plaintiff's second argument dispositive, it does not reach the applicability of DOHSA. As a result, the following analysis concerns only the issue of whether

Honeywell can remove a DOHSA claim to federal court absent an alternative basis for federal jurisdiction when Honeywell was sued in its home jurisdiction.

A federal court must find that a statutory and constitutional basis for jurisdiction exists in order to adjudicate a dispute. *Dumansky v. United States*, 486 F. Supp. 1078, 1082 (D.N.J. 1980). Article III Section 2 of the United States Constitution grants federal courts jurisdiction over "all cases of admiralty and maritime jurisdiction." U.S. Const. art. III § 2. Article III empowers

> (i) Congress to confer admiralty and maritime jurisdiction on the tribunals inferior to the Supreme Court, (ii) the federal courts to draw on the substantive law inherent in maritime jurisdiction and continue to develop it, and (iii) Congress to revise and supplement the maritime law within the limits of the constitution.

*Gregoire v. Enter. Marine Servs., LLC*, 38 F. Supp. 3d 749, 754 (E.D. La. 2014) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 360-61 (1959)). Thus, "[w]hile the constitution granted the judicial power over admiralty matters to the Supreme Court, Congress statutorily made admiralty matters cognizable within lower federal courts' jurisdiction in the Judiciary Act of 1789." *Id.* at 754-55.

Section 9 of the Judiciary act "established federal courts for the administration of maritime law" and "recognized that some remedies in matters maritime had been traditionally administered by common-law courts of the original States."[5] *Romero*, 358 U.S. at 362. This recognition was documented in the "savings to suitors" clause, which qualified the jurisdictional grant by "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." *Gregoire*, 38 F. Supp. 3d at 755 (citing Ch. 20, § 9, 1 Stat. 76–77).

---

[5] The Judiciary Act was amended in 1875, however federal court jurisdiction over admiralty claims has remained unchanged to the present day. *See Romero*, 358 U.S. at 361.

5

Congress has since codified the admiralty jurisdictional grant in 28 U.S.C. § 1333, which provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*

(emphasis added). "Subsection (1) is referred to as the 'saving to suitors' clause and permits plaintiffs who have *in personam* actions to file their claims as ordinary civil actions or as admiralty actions." *Sea-Land Serv., Inc. v. J & W Imp./Exp., Inc.*, 976 F. Supp. 327, 329 (D.N.J. 1997). Thus, Section 1333 preserves concurrent jurisdiction for admiralty actions in state and federal court. *Romero*, 358 U.S. at 372; *Gregoire*, 38 F. Supp. 3d at 764 (noting that "Congress carefully wrought Section 1333 to balance interests of federalism and recognize historical development of maritime law in state courts by including the saving to suitors clause."). This concurrent jurisdiction applies to claims brought pursuant to DOHSA. *See Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772, 778 (S.D. Tex. 2013) ("Like admiralty claims, state and federal district courts have concurrent original jurisdiction over DOHSA claims."); *Pierpoint v. Barnes*, 892 F. Supp. 60, 61 (D. Conn. 1995).

There are distinctions for litigants based on whether they pursue a maritime suit under admiralty jurisdiction in federal court or at common law in state court. *Gregoire*, 38 F. Supp. 3d at 756-57. Most importantly, "[a] chief advantage of filing suits at common law is the availability of a jury trial, as guaranteed by the Seventh Amendment, which is a remedy generally unavailable to suits in admiralty." *Id.* at 757.

As noted, federal jurisdiction is governed by 28 U.S.C. § 1441. Originally, Section 1441(b) provided that:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the

6

> Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action* shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441 (2006) (emphasis added). In *Romero*, the Supreme Court concluded that admiralty cases do not fall within § 1331's federal question jurisdiction and therefore are not removable absent an independent basis for jurisdiction. 358 U.S. at 368. Courts interpreted this to mean that admiralty cases were properly classified as "any such action[s]," and not under the first sentence of § 1441. *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 817 (7th Cir. 2015). This is because "when a maritime claim is filed in state court under the [s]avings[-]to[-s]uitors [c]lause, it is transformed into a case *at law,* as opposed to admiralty." *Sanders v. Cambrian Consultants (CC) Am., Inc.*, 132 F. Supp. 3d 853, 858 (S.D. Tex. 2015). Since a matter is brought pursuant to common law when filed in state court, federal district courts no longer have jurisdiction over such claims. *Id.* Thus, "plaintiffs who elect to litigate a common-law maritime claim in state court are entitled to keep their preferred forum, when the defendant is a citizen of the forum state, unless some other jurisdictional grant also applies and permits removal." *Lu Junhong*, 792 F.3d at 817.

Therefore, pursuant to Section 1333, admiralty cases did not provide an independent basis to remove under Section 1441 prior to its amendment. *See Romero*, 358 U.S. at 368. "Specifically, courts have held that admiralty cases are removable only if diversity of citizenship exists (and the defendant is not a citizen of the forum state), or the plaintiff also brought some other federal claim such that supplemental jurisdiction could be extended over the admiralty claim."[6] *Forde v.*

---

[6] The condition that a defendant not be a citizen of the forum state, which is called the "forum defendant rule," bars home-state defendants from removing suits based purely on diversity. While courts applied this rule to the original version of Section 1441, it was not explicit in the rule until the 2011 amendment.

*Hornblower N.Y., LLC*, No. 16-4028, 2017 WL 1078585, at *3 (S.D.N.Y. Mar. 20, 2017) (internal citations omitted); *Sea-Land Serv., Inc.*, 976 F. Supp. at 329–30 ("[A]dmiralty, in and of itself, does not create federal question jurisdiction so that a claim filed in state court can be removed to a district court."). This is true for claims brought pursuant to DOHSA, since they "arise exclusively in admiralty." *Pierpoint*, 892 F. Supp. at 61; *Speranza v. Leonard*, 925 F. Supp. 2d 266, 271 (D. Conn. 2013) (holding that "[DOHSA] cases arise in admiralty and thus do not provide federal question jurisdiction such that removal is proper.").

In short, prior to the 2011 amendment to Section 1441, a diversity defendant, who was a citizen in the state in which it was sued, could not remove the case to federal court solely based on admiralty jurisdiction. The defendant needed another, separate basis for federal jurisdiction to properly remove the matter. The question now raised is whether the 2011 amendment changed this long-standing rule?

In 2011, Congress amended Section 1441(b)(2) to read:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b) (2011). Unlike its predecessor, the amended statute no longer distinguishes between claims "arising under the Constitution, treaties or laws of the United States" and "other such action[s]."

The Third Circuit has not addressed the 2011 amendment in the context of admiralty jurisdiction. Courts in other jurisdictions that have decided the issue tend to apply a two-pronged approach which reviews (1) whether the amendment was procedural or substantive; and (2) whether it displaced the savings-to-suitors clause. *See, e.g., Forde*, 2017 WL 1078585, at *5; *Sanders v.*, 132 F. Supp. 3d at 858.

8

Numerous courts have determined that the 2011 amendment was procedural only, and therefore it does not affect the substance of federal court jurisdiction. *See, e.g., Gregoire*, 38 F. Supp. 3d at 762 (referring to the 2011 amendment as a "clarification" of Section 1441(b)); *Nassau Cty. Bridge Auth. v. Olsen*, 130 F. Supp. 3d 753, 763 (E.D.N.Y. 2015) (holding that Congress's intention in amending Section 1441 was "procedural, not substantive"). In doing so, courts have relied on the legislative history to the amendment. H.R.Rep. No. 112–10 ("Section 103(a)(3) places the provisions that apply to diversity actions under one subsection. This change is intended to make it easier for litigants to locate the provisions that apply uniquely to diversity removal."). The courts have added that if Congress had intended to make such a sea change to the existing law, it would have so indicated. *See Nassau Cty. Bridge Auth.*, 130 F. Supp. 3d at 763.

Also, many courts have concluded that the amendment did not displace the savings-to-suitors clause. *See, e.g., Gregoire*, 38 F. Supp. 3d at 764 (finding that the amendment "in no way modified the long-standing rule that general maritime law claims require some other non-admiralty source of jurisdiction to be removable"); *Forde*, 2017 WL 1078585, at *5 ("There is no indication in the legislative history of the 2011 amendments to § 1441 that Congress had intended to remove or alter the savings[-]to[-]suitors clause.") (internal quotation marks omitted).

Defendant relies largely on two cases to support its position that the 2011 amendment made admiralty cases removable even when there is not another basis for jurisdiction, *Ryan v Hercules Offshore, Inc.*, 945 F. Supp. 2d 772 (S.D. Tex. 2013) and *Lu Junhong v. Boeing Co.*, 792 F.3d 803 (7th Cir. 2015).[7] Def. Opp'n at 8-11. In *Ryan*, Judge Miller determined that the 2011 amendment

---

[7] The parties also dispute a single page Order issued by Judge Bumb in *Olmo v. Atlantic City Parasail*, No. 13-4923, D.E. 16 (D.N.J. Jan. 24, 2014). *Compare* Pl. Br. at 17 n.1 *with* Def. Opp'n at 10. This single page Order issued by Judge Blum does not address Section 1441 or the savings-to-suitors clause of Section 1333 and therefore does not offer guidance on the issue.

9

altered the removability of maritime claims, making them removable to federal court without an independent jurisdictional basis. 945 F. Supp. 2d at 777. In so holding, Judge Miller reasoned that the 2011 amendment to Section 1441(b) constituted a substantial change in traditional removal jurisdiction, and since Section 1333 confers original jurisdiction on federal courts regarding admiralty claims, Congress intended to make all admiralty claims removable with the amendment. *Id.* at 777-78.

Two years later in *Sanders*, Judge Miller had an opportunity to revisit the issue. 132 F. Supp. 3d at 857. While Judge Miller stated that "*Ryan* was properly decided on the facts and arguments presented in that case," he also noted that in *Sanders*, the plaintiff raised the additional argument (not raised in *Ryan*) that the savings-to-suitors clause applied. *Id.* at 858. The *Sanders* court held that "when a maritime claim is filed in state court sunder the [s]avings[-]to[-s]uitors [c]lause, it is transformed into a case *at law*, as opposed to admiralty." *Id.* Therefore, *Sanders* held that federal district courts do not have original jurisdiction over claims filed pursuant to the savings-to-suitors clause when the case involves an at-home defendant an no other independent basis for federal jurisdiction exists. *Id.* In other words, when Judge Miller had the occasion in *Sanders* to focus on the effect of the savings-to-suitors clause, he concluded that the 2011 amendment to Section 1441 did not change the long-standing rule concerning admiralty jurisdiction in federal court.

Defendant also points to *Lu Junhong*, 792 F.3d at 817-18. In *Lu Junhong*, the plaintiffs argued that the 2011 amendment to Section 1441 did not change the long-standing rule in admiralty cases. *Id.* at 817. The Seventh Circuit disagreed. *Id.* After reviewing Section 1441 both pre- and post-amendment, the *Lu Junhong* court concluded that the 2011 "amendment limits the ban on removal by a home-state defendant to suits under the diversity jurisdiction." *Id.* In other words,

according to the Fifth Circuit, the long-standing rule concerning admiralty cases did not survive the amendment.

However, the Fifth Circuit also noted that the plaintiffs provided no basis for their argument. *Id.* ("Plaintiffs' brief asserts: 'admiralty jurisdiction does not provide a basis for removal absent an independent basis for federal jurisdiction . . .' There plaintiffs stop; they don't explain why.") (citations omitted). As a result, the panel in *Lu Junhong* added the following caveat to its decision:

> Perhaps it would be possible to argue that the savings-to-suitors clause itself forbids removal, without regard to any language in § 1441. But plaintiffs, who have not mentioned the savings-to-suitors clause, do not make such an argument. We do not think that it is the sort of contention about subject-matter jurisdiction that a federal court must resolve even if the parties disregard it. Our conclusion that § 1331(1) supplies admiralty jurisdiction shown that subject-matter jurisdiction exists. Plaintiffs thus could have filed these suits direct in federal court (as many victims of this crash did). If the saving-to-suitors clause allows them to stay in state court even after the 2011 amendment, they are free to waive or forfeit that right.

*Id.* at 818.

Thus, the *Lu Junhong* court never addressed whether the savings-to-suitors clause survived the 2011 amendment to Section 1441. In that case, the plaintiffs failed to raise the argument, and the Fifth Circuit determined that it was not an issue that it would address *sua sponte* and that the issue could be waived (because federal courts had concurrent subject-matter jurisdiction). Of course, this Court cannot predict with any certainty how the Fifth Circuit will rule when faced with the savings-to-suitors clause argument. Perhaps the circuit will follow the reasoning of Judge Miller when he performed a substantive review of the issue in *Sanders*. Perhaps not. In any case, the Fifth Circuit's decision is not binding precedent on this Court. Moreover, the Court does not find the Fifth Circuit's decision persuasive in this matter because the *Lu Junhong* court expressly

11

indicated that they were not considering the savings-to-suitors clause issue, the very argument which Plaintiff raises in this case. Thus, the two cases primarily relied on by Honeywell do not strongly support its position: *Ryan* because the same judge later changed course in *Sanders*, and *Lu Junhong* because the panel did not rule on the relevant issue.

The Court therefore concludes that the amendment to Section 1441(b) did not disturb the settled principle that Section 1331(1)'s savings-to-suitors clause allows a plaintiff to prevent removal where the only basis for federal jurisdiction is admiralty. First, the Court agrees that the 2011 amendment was procedural in nature. Second, this amendment did not displace the savings-to-suitors clause. The lengthy history of the savings-to-suitors clause would require a more explicit direction from Congress in order to overturn centuries of precedent. *See Cassidy v. Murray*, 34 F. Supp. 3d 579, 584 (D. Md. 2014) (finding that "[t]he Court is not inclined to reject decades of well-established law to adopt an unsettled attempt to alter the course of removal procedures without clear, binding, precedent."). Given that the Third Circuit has not weighed in on this issue, and Defendant has the burden to establish federal jurisdiction, this Court joins the other courts that have reached the conclusion that the 2011 amendment did not displace the savings-to-suitors clause and therefore admiralty jurisdiction does not provide an independent basis for removal. *See, e.g., Forde*, 2017 WL 1078585, at *5; *Langlois v. Kirby Inland Marine, LP*, 139 F. Supp. 3d 804, 814 (M.D. La. 2015); *Nassau Cty. Bridge Auth.*, 130 F. Supp. 3d at 763; *Gregoire*, 38 F. Supp. 3d at 764; *Cassidy*, 34 F. Supp. 3d at 583. Therefore, this Court grants Plaintiff's motion to remand this matter to state court.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to remand is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: May 10, 2017

                                                                    _____
                                                                    John Michael Vazquez, U.S.D.J.